FLORENCE SHIPLEY PARTELLO, Appellee, v. GEORGE W. WHITE et al., Appellees; ADELINE S. ABELL et al., Appellants.

**DEEDS:** Delivery—Presumption. The law will proceed on the presumption that an unconditional warranty deed was unconditionally delivered to the grantee, when it is made to appear that such deed was in grantee's possession, though unrecorded, during his lifetime, and was found among his papers after his death. Evidence reviewed, and held to reinforce the presumption in part, and to be quite insufficient as a whole to overthrow the presumption of delivery.

**DEEDS:** Delivery—Surrender on New Consideration. Principle reaffirmed that the voluntary surrender of a deed by a grantee, or by one claiming under said grantee, in consideration of some new agreement, effectively estops the one making the surrender from asserting further right under the surrendered deed.

**COMPROMISE AND SETTLEMENT:** Consideration—Surrender of Questionable Deed. A contract by one party to devise lands finds ample support in the voluntary surrender by the other party to the contract of an unrecorded deed through and under which he was, in good faith, claiming title; *and this is true even though the validity of such deed might have been in doubt.*

**FRAUDS, STATUTE OF:  Operation and Effect of Statute—Full Performance.**  An oral contract to devise lands is taken out of the statute of frauds by the act of the party in executing a devise in the form of a duly executed codicil to his will, and by the act of the devisee in accepting said devise and acting thereon to her detriment.

**WILLS:  Contract to Devise—Construction.**  A contract on a valuable consideration to devise lands, confirmed by a duly executed codicil, "provided I have not sold or disposed of said farm prior to my death" (but also providing that, in case of a sale, the proceeds shall go to the devisee), will not be construed to authorize the devisor to deprive devisee of any part of said land.

**WILLS:  Contract to Devise—Enforcibility.**  Principle reaffirmed that a contract to devise is not testamentary in character, and may be enforced as a contract.

*Appeal from Palo Alto District Court.*—D. F. COYLE, Judge.

## JANUARY 8, 1924.

THIS is an action to enforce a contract for the devise of a farm.  From a decree for the plaintiff, the defendants, except the executor and executrix of the estate of Dwight J. Partello, Sr., appeal.—*Affirmed.*

*McCarty & McCarty* and *Offutt & Imlay*, for appellants.

*Deacon, Sargent & Spangler, Good, Childs, Bobb & Westcott, E. A. & W. H. Morling, Peele & Ogilby,* and *Thomas O'Connor,* for appellees.

VERMILION, J.—Dwight J. Partello, Sr., was, for many years prior to his death, in the consular service of the United States government, stationed in various cities in Germany, and later was an agent of the United States treasury in Berlin.  He was a man of culture, interested in music, and a collector of rare porcelains, pictures, and musical instruments.  He appears to have possessed considerable means, his collection of violins being valued at $75,000 or more.  During the later years of his life, he seems to have divided his time between Washington, where he owned a home, and Berlin, where he also maintained

an apartment. His family consisted of two daughters and a son. The daughters, Mrs. Abell and Mrs. Von Horst, have resided much of the time abroad. The husband of the former was a musical critic and a writer on musical affairs. Mrs. Von Horst's husband, an American citizen of German descent, who, when abroad, used the hereditary title of baron, seems to have been the founder or patron of a musical conservatory in Coburg. The son, Dwight J. Partello, Jr., before his death was in business in Chicago.

Prior to the transactions here involved, the father was the owner of a farm of 480 acres in Palo Alto County, Iowa. It is over this farm that this controversy arises. The plaintiff and appellee, Florence Shipley Partello, is the widow of the son, Dwight J. Partello, Jr., and the sole beneficiary under his will. The executor and executrix of the will of Dwight J. Partello, Sr., are defendants, and his above mentioned daughters and their husbands are defendants and appellants. The action is in equity, and the relief sought is the specific performance of an alleged contract on the part of Dwight J. Partello, Sr., to devise the farm to plaintiff.

It appears without substantial dispute that, in 1912, the father executed a warranty deed to the son for the farm in question, and sent it to the latter by mail. On January 11, 1920, the son died, at the Edgewater Beach Hotel, in Chicago, where he and his wife, Florence Partello, were living. The father arrived in Chicago a few hours after the son's death, and both before and after the funeral made frequent inquiries concerning the deed to the Palo Alto County farm and the leases with the tenant. After some search among the son's papers, following the funeral, the deed was found in a locked compartment of the son's safe in his office. The deed had not been recorded. The father stated that it was of no value to the widow because of that fact, and asked that it be returned to him. The widow sought the advice of Mr. Buell, an attorney who had been the legal adviser of her husband during his life. The matter was discussed for some time, the question being that, if Mrs. Partello surrendered the deed, her rights should be protected in some way. Finally it was agreed that, if the father would execute a codicil to his will, devising the farm to her, she would

surrender the deed.    The codicil was dictated by Mr. Buell
in the father's presence, executed by him, and properly wit-
nessed.    Thereupon, the deed was handed by the plaintiff to
the father.    A week later, after his return to Washington, he
executed another codicil, making no reference to the former one,
but providing that the farm in question should be sold and the
proceeds divided equally between the plaintiff and the two
daughters.    The former codicil, executed in Chicago, was pre-
sumably destroyed.    A carbon copy, however, had been retained
by Mr. Buell in his files, and this is in evidence.    Dwight J.
Partello, Sr., died in August, 1920, and his will and the second
codicil, executed in Washington, have been admitted to probate
in the District of Columbia.

It should be said that, while the transaction in Mr. Buell's
office, as briefly detailed above, is not admitted by the defend-
ants, it is quite clearly established by the testimony of several
witnesses, among them two of the three witnesses to the codicil,
one of whom was the stenographer who received the dictation
of the codicil, transcribed it, and placed in Mr. Buell's files the
carbon copy in evidence.    The testimony of the plaintiff herself
was doubtless in large part incompetent.    Mr. Buell, who dic-
tated the codicil and was one of the attesting witnesses, died
before the trial.    The testimony of the two attesting witnesses is
corroborated in many important respects by four other wit-
nesses.    This testimony is uncontradicted.    We must regard the
finding of the deed to the farm among the effects of the son, its
possession by the plaintiff, his sole devisee, the execution of the
codicil by the father, and the surrender of the deed under the
circumstances narrated above, as fully established by competent
evidence.    And further, as to the effect of this transaction, it is
equally clear that the plaintiff surrendered the deed in consid-
eration of the promise of the father to execute a codicil to his
will devising the farm to her; and that, in pursuance of such
promise and in consideration of the surrender to him of the
deed, the latter, at the time, fully executed the codicil contem-
plated by their agreement.    The principal—indeed, the real—
controversy in this case is over the question whether this con-
tract is enforcible at the suit of the plaintiff.    Much of the
voluminous record is given over to testimony relating to the

delivery of the deed by the father to the son,—whether conditional, and if so, upon what conditions it was made; and these questions have been argued at great length, especially by counsel for appellants.

The specific relief asked in the petition is the enforcement of the alleged contract to devise the farm to plaintiff. Although the plaintiff alleges that the title to the land was in her husband by virtue of the deed, and passed to her by his will, it is apparent that she is not now asserting a title based on the deed, but upon the contract. She sets up her surrender of the deed as the consideration for the contract upon which she relies; and, while she does not, in terms, aver that, by. surrendering the deed, she became divested of the title, such is the plain inference to be drawn from her pleading. It may be that the mere surrender of his deed by the grantee to the grantor does not divest the title of the former; but, as will presently be seen, the situation here is much more than that; and after her surrender of the deed, under the circumstances disclosed, the plaintiff could not have been heard to assert title under it. She does not now rely upon a title so derived. It follows that the questions whether the deed was delivered by the father to the son, or what, if any, conditions were attached to the manual delivery of it, are not determinative of the plaintiff's claim. Appellants have, however, made the contention that there was no delivery, or a conditional delivery, a basis for their argument that there was no consideration for the contract of the father to devise the farm to plaintiff. Upon the assumption that one or the other of these propositions has been established, it is argued that, since plaintiff had nothing by virtue of the deed, she parted with nothing in surrendering it, and therefore the contract of the father was without consideration. In the aspect, then, of its relation to the question of consideration, both in respect to appellant's argument and in respect to plaintiff's good faith in asserting some claim under the deed before she surrendered it, rather than upon it as, in and of itself, determinative of the case, the question of delivery will be considered.

The instrument, a warranty deed with the usual covenants, absolute, and with no conditions appearing upon its face, had been in the possession of the deceased grantee during his life,

1. DEEDS: delivery: presumption.

and was found among his papers after his death. It passed rightfully into the hands of the plaintiff, his sole devisee. She parted with the possession of it, and it came into the hands of the grantor under circumstances fully disclosed by the record. Under such circumstances, a delivery to the grantee will be presumed, and the burden of showing a want of delivery, or a conditional delivery, is upon the party so claiming. *McGee v. Allison,* 94 Iowa 527; *Witt v. Witt,* 174 Iowa 173; *Potter v. Potter,* 185 Iowa 559; *Hild v. Hild,* 129 Iowa 649; *Nowlen v. Nowlen,* 122 Iowa 541; *Conway v. Rock,* 139 Iowa 162; *Stiles v. Breed,* 151 Iowa 86; *Mathers v. Sewell,* 193 Iowa 35.

The deed, with the signature and the year in the date line torn away, is in evidence. What remains of the date shows that it was signed on the 24th day of May. It appears from the certificate of acknowledgment that it was acknowledged in the District of Columbia on May 27, 1912. There was found among the papers of the grantee a letter in the handwriting of the grantor, dated at his residence in Washington, May 25, 1912, addressed to the son, in which this language appears:

"I have written out the deed of conveyance for the south farm and the first of the week will have it acknowledged, adding the certificate of the clerk of the court to make it perfect, and send it to you by registered letter—File it away in a very safe and secure place and if anything should happen to me, go yourself at once or send it registered with the fee noted on the back, 50 cents, to have it recorded, or trouble might follow— Don't delay a moment if anything should happen to me, but get it on record—the address is Recorder's office, Emmetsburg, Iowa."

On June 5, 1912, the father wrote the son: "I received your letter acknowledging the deed," etc. The will of the grantor, executed January 31, 1918, is a lengthy document, filling nine pages of the abstract. It affords inherent evidence that a degree of care and thought perhaps unusual even for an instrument of such importance and solemnity, was given to its preparation. In addition to numerous legacies, special bequests, and devises, it lists, by the name of the artist or maker and the date, or other description, nearly, if not quite, one hundred pic-

tures, porcelains, and musical instruments, and makes disposition of them. The first clause of this will so carefully prepared nearly six years after the execution of the deed is as follows:

"Having executed in favor of, and delivered, to my son and namesake, Dwight J. Partello, Jr., a deed in fee simple, for my 480-acre farm, known as 9.95, Range 32 Nevada Township, Palo Alto Co. state of Iowa, to be his, my said sons, sole property forever. In the event of any question being raised as to said conveyance, I hereby confirm said transfer of said land and give, bequeath and devise, said farm, to my son aforesaid, to be his sole property, in fee simple, free from all demands, claims or encumbrances whatever."

Numerous statements of the father are shown, to the effect that he had given the farm to his son, or deeded the farm to him. The son, during a considerable part of the time intervening between the date of the deed and his death, exercised control over the farm, and executed leases with tenants in his own name. There is testimony that he collected rents, which he seems to have divided with, or under the direction of, the father; made improvements, probably out of income; and verbally asserted his ownership. As opposed to this, it appears that the father, for two or three years after the date of the deed, executed leases in his name; that he paid taxes on the farm, and directed the division of the rents received. There is testimony of numerous statements by the son to the effect that he expected the farm at his father's death; that, while he had a deed for it, it was of no value to him; that he was not to record it; that it was a "provisional deed;" and that his father had a right to take it back. Two witnesses, intimate friends of the father's in Washington, testify that, on one occasion in 1914 or 1915, when the father and son were together, the father said, speaking of the deed to the son:

"Did you not understand from the very beginning that it was simply a provisional document? I relinquish no rights in the property, and it is mine as long as I live. Did you not understand this and agree to it?"

To which the son replied, in substance, that he understood it and agreed to it. This, it should be noted, was a considerable time before the execution of the father's will, in which he

makes the declaration that he has executed and delivered to the son a deed in fee simple of the farm, to be his sole property forever.

It is unnecessary to extend this opinion by a discussion in detail of the testimony of the witnesses, or of the facts surrounding the making of the various statements of both father and son, as testified to, or of other matters affecting the credibility of the witnesses or the weight of their testimony. The record, as a whole, contains no showing sufficient to overcome the presumption of delivery arising from the possession by the grantee of the deed, unconditional in form, buttressed, as it is, by the statements in the grantor's letter, which, while explicit concerning the recording of the deed, is silent as to any conditions attached to its delivery, and the solemn declaration found in his will, to the effect that by the deed the farm is to be the son's sole property forever, and that by the will he confirms the transfer. This statement in the will is entitled to great weight, not only on authority (*McKemey v. Ketchum*, 188 Iowa 1081), but by reason of its relation in point of time to the deed and the various statements of the grantor. The fact that the grantor continued to exercise some measure of control over the property, while entitled to weight, is not controlling (*Leighton v. Leighton*, 196 Iowa 1191); and in this case, its force is much weakened by the further fact that the father's participation in the management lessened materially after a few years.

But, as has been said, the question of delivery is not decisive of the case. The plaintiff surrendered the deed, and is not claiming under it, and, unless she can enforce the promise upon which she relinquished it, she cannot prevail in this action.

It is earnestly contended that the contract relied upon is without consideration. It is said that, if the deed was valid, its surrender did not operate to divest the plaintiff of her title thereunder, and therefore she lost nothing by surrendering it. This proposition is supported by cases holding that, where the grantor obtained possession of a delivered but unrecorded deed without the consent of the grantee, the latter's title was not divested. They are not in point; but the situation presented in the present case comes squarely within the rule announced in *Brown v.*

2. DEEDS: delivery: surrender on new consideration.

*Brown,* 142 Iowa 125, where it is said, upon the authority of the cases there cited:

"Counsel for plaintiff contend that, after title has passed by conveyance, a mere surrender to the grantor of the instrument of conveyance does not terminate the title of the grantee, and, as a general proposition, this may be conceded to be correct; but, on the other hand, it is well settled that a voluntary surrender of the possession of an unrecorded deed, made with the intention of relinquishing the title conveyed by it, and accepted by the grantor as such relinquishment in consideration of other agreements between the parties founded thereon, will estop the grantee from asserting any further right under such instrument."

If the deed was delivered, and was valid to convey an estate of inheritance to the son, there can be no question but that there was a sufficient consideration for the promise to devise the farm to plaintiff. Aside from the proposition that, by surrendering the deed under the circumstances shown, the plaintiff deprived herself of the right to assert title under it, the surrender of the evidence of title was, we think, sufficient consideration. *Mansfield v. Watson,* 2 Iowa 111, and *Leach v. Keach,* 7 Iowa 232, lend support to this proposition.

3. COMPROMISE AND SETTLE-MENT: consideration: surrender of questionable deed.

However, if the question of the delivery and validity of the deed were doubtful, still the settlement and compromise of plaintiff's claim thereunder would be a sufficient consideration for the promise of the father to devise the land to her. This is too well settled to admit of controversy. *Richardson & B. Co. v. Independent District,* 70 Iowa 573; *Adams v. Morton,* 37 Iowa 255; *Mowbray v. Simons,* 183 Iowa 1389; *Carter v. Iowa S. B. M. Bldg. & Loan Assn.,* 135 Iowa 368; *Heffelfinger v. Hummel,* 90 Iowa 311; *Cantonwine v. Bosch Bros.,* 148 Iowa 496; *Jewett Lbr. Co. v. Conroy Co.,* 171 Iowa 513; *Goodman Mfg. Co. v. Mammoth Vein Coal Co.,* 185 Iowa 253; *Smith v. C. R. & M. R. Co.,* 43 Iowa 239. Nor must it necessarily be found, in an action upon the contract of settlement, that plaintiff's original claim was valid and enforcible. This would seem to be obvious on the face of it. If a party seeking to recover upon or enforce a contract of settlement must, in order to prevail, establish the

original right claimed by him, which he relinquished in the settlement, he has gained nothing by the compromise. Such a rule would defeat the very object of compromise, a thing favored by the law. For if one who foregoes part of a doubtful claim in a settlement that purports to give him the rest, or relinquishes all of it for a new promise, must, in order to secure the benefit of his settlement, be put to the task of establishing the validity of his original demand, he had better have stood upon it in the first place. If he must establish as much to secure the benefit of his compromise as he was required to prove to enforce his original claim, he has gained nothing by the abatement of his first demand. Success would have secured him all he claimed before the compromise, while failure would be as disastrous in the one instance as in the other. If one seeking to enforce a contract whereby he settled a disputed claim must fail unless the validity and enforcibility of his original claim appear,— that is to say, if the maker of the new promise can avoid it upon a showing of defense, short of illegality or fraud, to his original undertaking,—it should follow that, upon establishing the original claim, the right to enforce it, regardless of the compromise, should also exist. The obligations arising from the compromise and settlement of a disputed or doubtful claim are reciprocal. It is, indeed, the very doubt or question as to the enforcible character of a demand that lies at the root of a compromise. The agreement to accept less than the amount due on an unquestioned obligation is without consideration, as is also an agreement to do something based on the new promise of another to do what he is already admittedly under obligation to perform. There is no purpose to doubt the familiar rule that the compromise of an illegal demand, or one founded on an unlawful consideration, or one wholly unfounded, and tainted with bad faith, cannot be enforced. But the doctrine that, in order to recover upon or enforce an agreement of compromise, it is not necessary that the validity of the original claim be shown, is well settled by authority. *Goodman v. Coal Co.,* supra; *Adams v. Morton,* supra; *Smith v. C. R. & M. R. Co.,* supra; *Jewett Lbr. Co. v. Conroy Co.,* supra; *Cantonwine v. Bosch Bros.,* supra; *Brown v. Jennett,* 130 Iowa 311; *French v. French,* 84 Iowa 655; *Keefe v. Vogle,* 36 Iowa 87; *Galusha v. Sherman,*

105 Wis. 263; *Dunham v. Griswold,* 100 N. Y. 224; *Hennessy v. Bacon,* 137 U. S. 78 (34 L. Ed. 605); *White v. Hoyt,* 73 N. Y. 505; *Neibles v. Minneapolis & St. L. R. Co.,* 37 Minn. 151; *DeMars v. Musser-Sauntry L. L. & M. Co.,* 37 Minn. 418; *Perkins v. Trinka,* 30 Minn. 241; *Hall v. Wheeler,* 37 Minn. 522; *Connor v. Etheridge,* (Neb.) 92 N. W. 135; *Bement v. May,* 135 Ind. 664; *Dunbar v. Dunbar,* 180 Mass. 170; *Adams v. Crown Coal Co.,* 198 Ill. 445; *Armijo v. Henry,* 14 N. M. 181 (25 L. R. A. [N. S.] 275), and cases cited in note. Briefly stated, the conclusion is that the compromise of a doubtful right asserted in good faith is a sufficient consideration for a promise, and it is not material on which side the right is ultimately found to lie.

The contention that the contract upon which plaintiff relies

4. FRAUDS, STATUTE OF: operation and effect of statute: full performance.

is within the statute of frauds is met by the fact that it was fully performed by the plaintiff, and by the father to the extent of the execution of the codicil contemplated by the agreement. *Stewart v. Todd,* 190 Iowa 283.

Appellants are understood to say that the contract was performed by the father, and that no breach on his part is shown. This contention is based upon the wording of the codicil executed in Chicago, where, after the devise of the

5. WILLS: contract to devise: construction.

farm to plaintiff, this language is found: "* * * provided I have not sold or disposed of said farm prior to my death." This is followed by a provision to the effect that, in case of a sale of the farm, the proceeds should go to the plaintiff. It is argued that a right to dispose of the farm during the testator's life otherwise than by sale was reserved, and that the disposition made of it in the second codicil was such a disposal of it during his lifetime as the contract evidenced by the first codicil contemplated. The contract upon which plaintiff relies is, in substance, a contract to give her the farm by will. Such a contract cannot be rescinded except by the consent of both parties. *Stewart v. Todd,* supra. The codicil executed in Chicago was, it is true, accepted as conforming to the contract; but it does not, we think, follow that the contract contemplated that the property which the father was, upon a consideration, binding himself to give to the plaintiff by will might be by him given by a later testamentary act to another,

thus defeating the very purpose of the agreement. To so hold, and to say that the very contract which plaintiff secured in consideration of her surrender of the deed contemplated that the father still retained, notwithstanding his agreement to will the farm to her, the right to otherwise dispose of it by will, with the result that she should receive nothing for the surrender of the deed, would be to make of the contract an empty form of words. The whole transaction would be meaningless and futile. She would be giving a consideration for the promise of a substantial thing, and at the same time stipulating that fulfillment of the promise need be nothing more, at the will or caprice of the promisor, than a mere form,—a shadow, without substance. The words "sold or disposed of" were, we think, used as synonymous,—referring to the same thing: a sale of the farm by the testator during his life, in which event plaintiff was to have the proceeds,—if not during his life, at his death. 7 Words and Phrases (1st Series) 6407; 2 Words and Phrases (2d Series) 81; *Rutledge v. Crampton,* 150 Ala. 275 (43 So. 822); *Phelps v. Harris,* 101 U. S. 370 (25 L. Ed. 855).

The doctrine that an agreement to bequeath or devise property based upon a sufficient consideration is not testamentary in character, and may be enforced as a contract, has been many times affirmed by this court, and is not open to question. *Sharpe v. Wilson,* 181 Iowa 753; *Stiles v. Breed,* supra; *Mueller v. Batcheler,* 131 Iowa 650; *Baker v. Syfritt,* 147 Iowa 49; *Horner v. Maxwell,* 171 Iowa 660; *Stewart v. Todd,* supra; *Manchester v. Loomis,* 191 Iowa 554.

6. WILLS: contract to devise: enforcibility.

The decree was right, and it is—*Affirmed.*

PRESTON, STEVENS, and DE GRAFF, JJ., concur.