WILLIAM P. KRCMAR, Appellee, v. ANNA KRCMAR, Appellant.

**WILLS:** Contract to Devise—Codicil As Deed. A duly signed, acknowledged, and recorded contract to the effect that a specified devise in the will of one of the parties to the contract should act as a deed to the other party to the contract will prevail over a subsequent conveyance of the property by the testator, especially when the grantee had *actual* notice of the contents of the will and of the contract in reference thereto. (See Book of Anno., Vol. 1, Sec. 11846, Anno. 23 *et seq.*)

**CONTRACTS:** Presumption—Burden of Proof. Presumptively a written contract is supported by a sufficient consideration, and the burden of proof rests on him who asserts to the contrary.

**CONTRACTS:** Validity of Assent—Confidential Relations. No presumption of confidential relations arises from the mere fact that the parties are closely related by blood.

**CONTRACTS:**  Validity of Assent—Duress—Evidence.  Long recogni-
4  tion of a contract by a party thereto has material bearing on a
subsequently raised issue of duress.

Headnote 1:  40 Cyc. p. 1070 (Anno.)  **Headnote 2:**  13 C. J. p. 760;
40 Cyc. p. 1065.  **Headnote 3:**  13 C. J. p. 758 (Anno.)  **Headnote 4:** 13
C. J. p. 769 (Anno.)

Headnote 2:  6 R. C. L. 651.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

## JANUARY 11, 1927.

Action to quiet title.  The opinion states the facts.  From a
decree for plaintiff the defendant appeals.—*Affirmed.*

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellant.

*L. D. Dennis* and *Johnson, Donnelly & Lynch,* for appellee.

VERMILION, J.—Frank Krcmar, deceased, was the husband
of the defendant and appellant.  The appellee is their son.
Prior to the transactions here involved, the deceased was the
owner of the property in controversy.  The ap-
pellee claims that the vacant ground was given
to him by his father.  In 1906, a double dwell-
ing house was constructed on the property.  It is conceded that
the father contributed some $5,200 to the cost of the building,
and appellee claims that he contributed in money and labor
about $1,500.  After the construction of the building, the ap-
pellee collected the rents until in 1913.  Thereafter, the father
received the rents up to the time of his death, on July 11, 1923.
On September 29, 1913, the father executed a codicil to his will,
by which he devised the property to appellee upon the condition
that he pay to the appellant $5,000.  On the same day, appellee
executed a writing, in the form of an affidavit, in which he certi-
fied that his father had paid all the bills incurred in the building
of the house, and that he had no interest in the property during
the life of his father.  On June 24, 1918, the deceased and ap-
pellee executed a written agreement, as follows:

"This agreement made this 24th day of June, 1918, between
Frank Krcmar, party of the first part, and William P. Krcmar,

*1. WILLS: con-
tract to devise:
codicil as deed.*

party of the second part. Witnesseth that whereas during the year 1906 said party of the second part received from his father, the said party of the first part, as his advancement, real estate described as the rear 60 feet of Lot 5, Block 60, Original Town now city of Cedar Rapids, Linn County, Iowa, consisting of a vacant lot 60 feet by 60 feet, and

''Whereas, during said year there was erected thereon a double house, toward the expense of which party of the first part paid approximately $5,200 and party of the second part paid approximately the sum of $1,500, and

''Whereas, said party of the second part collected the rents, paid taxes and all expenses connected with said premises after its completion for a period of approximately six years, and

''Whereas, said party of the first part since said time to this date has been collecting said rents, paying said taxes and expenses and upkeep, and

''Whereas, said party of the second part has never received a deed of conveyance to said premises, and

''Whereas, on September 23, 1913, said party of the first part executed a codicil whereby said party of the second part is to become the absolute owner of said premises upon the payment of $5,000, now therefore, it is hereby agreed as follows:

''That said codicil has been executed in lieu and instead of a deed of conveyance for said premises, as had been originally agreed and that said codicil represents the interest of said party of the second part in and to said premises.

''Executed in duplicate the day and year last above written.

                              ''Frank Kromar,
                              ''Party of the First Part.
                              ''Wm. P. Kromar,
                              ''Party of the Second Part.''

This instrument was signed and acknowledged by both parties, and was filed for record on February 7, 1919.

On December 21, 1922, the decedent executed a warranty deed for the premises in controversy to the appellant. This deed was left in the hands of George F. Buresh, decedent's attorney, and delivered by him to appellant after the death of the grantor. It was filed for record on July 26, 1923.

The appellee tendered in his pleadings and paid into the court the $5,000 required to be paid by him to the appellant by

the contract of June 24, 1918, and asked to have his title quieted as against the appellant, and that she be required to account for the rents and profits since the death of Frank Kromar.

The appellant alleged, in substance, that appellee procured the execution of the codicil to the will of deceased and the contract of June 24, 1918, under which he claimed, by threats of physical violence to, and mental coercion of, decedent, and that there was no consideration for the agreement.

It is quite apparent from the testimony that, during much of the time following the construction of the house in question, there was more or less controversy between the father and son as to who should receive the rent for the property. The testimony on behalf of appellant tends to show that there was also difficulty over the ownership, or appellee's claim of an interest therein, as well. The trouble was largely brought about by disagreements between appellee and one or more of his sisters as to certain advancements that had been made by decedent to the latter.

I.   The contract under which appellee claims is specific and definite, not only as to the past and present situation of the respective parties in relation to the property, but as to the rights secured thereby. It recites that appellant received the vacant lot as an advancement; that the father had contributed approximately $5,200, and the appellee approximately $1,500, to the construction of the house; that the appellee had collected the rents and paid taxes and all expenses connected with the premises for a period of approximately six years; and that thereafter the father had received the rents and paid the taxes and expenses. It further recites the fact that appellee had received no conveyance, and the execution of the codicil by which he was to have the property on the payment to appellant of $5,000. It is then expressly agreed that the codicil was executed in lieu of a deed, and that it represented the interest of the appellee in and to the premises.

An agreement, upon a sufficient consideration, to devise property may be enforced as against the heirs or devisees of the promisor. *Mueller v. Batcheler,* 131 Iowa 650; *Baker v. Syfritt,* 147 Iowa 49; *Horner v. Maxwell,* 171 Iowa 660; *Sharpe v. Wilson,* 181 Iowa 753; *Stewart v. Todd,* 190 Iowa 283; *Manchester v. Loomis,* 191 Iowa 554; *Partello v. White,* 197 Iowa 24. And

such a contract may be enforced against all persons having notice or knowledge thereof. *Allbright v. Hannah,* 103 Iowa 98. Aside from the fact that appellant was affected with constructive notice of the contract by reason of its being of record, it appears from her own testimony that she had heard of the arrangement by which appellee was to have the property on the payment to her of $5,000. Appellee testified that he told both his father and his mother that he needed more protection than the codicil, and that, after the execution of the contract, he told her it was "all fixed up," and she expressed her approval. Appellant, although denying that such an arrangement was made, did not expressly deny this conversation.

II. The written contract imports a consideration. Section 3069, Code of 1897 (Section 9440, Code of 1924). The appellee was not required to show a consideration, or any particular consideration; but the burden was upon appellant to establish a want of consideration, and this was not met by a showing that no consideration passed at the time the instrument was signed. *Manchester v. Loomis,* supra.

2. CONTRACTS: presumption: burden of proof.

Moreover, the relinquishment by appellee of his claim of present ownership of the property and right to the rent would be a good consideration for an agreement on the part of the decedent to devise the property to him. Such would seem to be the situation, if the codicil, the sworn statement of appellee that he had no interest in the property during his father's lifetime, and the written contract be considered together, in connection with the proven circumstances. Appellee testified, without contradiction, that he signed the affidavit relying on the protection which he understood the codicil gave him. Such an agreement was not performed by the mere execution of the codicil. *Partello v. White,* supra. The obligation continued, and while it continued, it was the legitimate subject of contract between the parties. *Manchester v. Loomis,* supra. In that case we said, of a somewhat similar situation:

"If the consideration originally agreed upon was of such a nature that it could not be proved by parol evidence, because of the statute of frauds, it was at all times competent for the grantee to make a written acknowledgment thereof, and thereby

to take it out of the statute of frauds. It was just as competent for her, by the same writing, to promise performance.''

The appellant failed to establish a want of consideration.

III. It is claimed that the relations between appellee and his father were such that the burden was upon the former to establish that the contract was fairly and voluntarily made by decedent.

No such confidential relation, or dominance of one over the other, is to be found in the mere fact of their blood relationship. *McKee v. McKee,* 190 Iowa 1357; *Albaugh v. Shrope,* 197 Iowa 844; *Shaffer v. Zubrod,* 202 Iowa 1062. There is nothing whatever in their business dealings from which such a confidential relation can be found. With respect to this property, they appear to have at all times dealt with each other at arm's length. Indeed, if the testimony on behalf of appellant be accepted as true, their relations were the reverse of confidential, and this property and appellee's claimed rights therein were a subject of more or less continual contention between them.

> 3. CONTRACTS: validity of assent: confidential relations.

IV. The only testimony having any tendency whatever to establish duress on the part of appellee relates to his insistence, at times perhaps more forcible than the occasion justified, that the property was, or should be, his, and the declarations of the decedent. No such conduct on the part of appellee is shown to have immediately preceded, or to have had anything to do with, the execution of the contract. No declarations by the deceased—passing the question of their competency, which was properly raised,— tended to establish such duress. Many of them were subsequent to the execution of the contract, and were to the effect that he had signed a paper for appellee and did not know what was in it.

> 4. CONTRACTS: validity of assent: duress: evidence.

The contract was prepared by the attorney who looked after decedent's business. It was executed by both the parties thereto in his presence, and acknowledged by them. There is nothing in the testimony of the attorney tending to show duress or coercion on the part of appellee, operating on the mind of the decedent at that time. His testimony is to the effect that the contract was prepared by him at appellee's request, and given to appellee, who later returned with decedent, when they both signed and ac-

knowledged it; that it was not then read to or by decedent; but that there was nothing done to prevent him from reading it. The same attorney had prepared the codicil to decedent's will and the affidavit of appellee, of the same date. The appellee testified that, after talking the matter over with his father and mother, he and his father went to the attorney's office where the contract was prepared and signed.

The effect of the instrument was merely to secure to appellee by contract, and make irrevocable without his consent, the provisions of the codicil, which decedent might have revoked by a subsequent will or made ineffectual by a conveyance. The contract remained of record for more than four years during decedent's lifetime, with no effort on his part to set it aside. *Shaffer v. Zubrod,* supra.

We are clearly of the opinion that the appellant failed to establish that the contract was procured by duress.

It was conceded that the appellant had never released her distributive share in the property. The parties stipulated in the court below that, if the contract was determined to be valid and enforcible, she would accept the sum of $5,000, to be paid her under the terms of the contract, in full satisfaction of her right to a distributive share therein, less the amount found due from her for rents collected.

The judgment and decree are—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.