FAIRFAX STATE SAVINGS BANK, Trustee, Appellant, v. THOMAS F. COLIGAN et al., Appellees.

No. 40457.

JANUARY 13, 1931.

*E. A. Johnson,* for appellant.

*John D. Stewart,* for appellee.

*Trewin, Simmons & Trewin,* for intervener.

EVANS, J.—The note and mortgage in suit were executed in May, 1924. The note and mortgage are concededly valid against Thomas Coligan, the husband. The mortgage is valid as against both defendants. The compromise alleged, involved another note of $2,700 plus. By the terms of the compromise, as claimed by the defendant-wife, she was to secure or pay $2,700, and to be absolved from further personal liability upon certain notes which preceded these. She paid the $2,700. The history of the transaction which culminated in the note and mortgage in suit is, briefly, that Thomas Coligan had become a surety for one Jerry Mulherin, who became insolvent. The creditor was the Fairfax State Savings Bank. In adjusting the liability of Thomas under his suretyship, this bank divided the indebtedness into two parts, and into two notes, of $2,700 and $5,200, respectively. It obtained the signature of Mrs. Coligan on the $2,700 note and the signature of Thomas Coligan upon the $5,200 note and the indorsement of guaranty by each of these parties upon the note of the other. The creditor-bank became insolvent, and passed into the hands of the receiver. These two notes were a part of its assets, and as

such, came into the hands of the receiver. The alleged compromise resulted from the attempted collection of those two notes. One Boyer was the examiner in charge of the insolvent bank, and Byers was his attorney. Upon demand for the payment of those two notes, Mrs. Coligan asserted that her signature had been obtained by misrepresentation and fraud, and such was the nature of the existing controversy, if any. She consulted her attorney, Donnelly, and the later negotiations of compromise were conducted by him.

The terms of the alleged compromise, as testified to by the defendant's witnesses, were that Mrs. Coligan was to pay or secure the $2,700 note by a mortgage upon an unencumbered 80 acres of land owned by her, and that she was to be absolved from further personal liability; and that her husband was to secure the $5,200 note by a second mortgage upon his farm of 338 acres, in which mortgage she was to join; that, while signing the mortgage, she inadvertently signed the note, also.

The contention for the plaintiff, under the testimony of its witnesses, was that there was no existing dispute or controversy, and no compromise; that the negotiations between the parties simply related to an extension of time upon the existing indebtedness, as represented by the previous notes; and that there was no absolving of the defendant from any existing obligation as indicated by the previous notes. It will thus be seen that the question at issue is mainly one of fact. The burden is upon the defendant to establish her defense and cross-bill by clear and satisfactory evidence.

The point of conflict between the witnesses is clear-cut. If the case rested upon the oral evidence in the record, we should have to say that the burden resting upon the defendant had not been carried. It so happened, however, that the terms of the alleged compromise were formulated in the form of an oral proposition by Donnelly on behalf of his client. This oral proposition was received by Boyer tentatively, to be sent to his superior officer for approval. He immediately reduced the proposition to writing, and sent it to his superior officer for approval. At the same time, he made a memorandum of the same proposition for the guidance of his attorney in the preparation of the notes and mortgages which were contemplated by the proposal. These writings then and there made by Boyer were introduced upon the

trial, and they quite dominate the evidence. Exhibit 4, being the memorandum to guide the attorney, was as follows:

"Rosalie Colgan mortgage for $2,700.00 5 years—annual interest 6% with privilege of paying $100.00 or any multiple on any interest-paying day—she is to pay up all back interest—revenue stamps for note—filing fee for mortgage—Furnish abstract of title—pay for examination to date of loan and for continuance showing the mortgage—*Note and mortgage* to be signed by Thomas Colgan her husband, secured on 80 acres land by first mortgage.

"Thomas Colgan.

"Mortgage for—dated May 16, 1924—$5,563.00 $5,200 payable on or before 3 yrs.—6%—annual interest. $363 due on or before March 1st, 1925, 6% interest from date until paid. Privilege of paying $100.00 or any multiple at any time. Colgan to pay for revenue stamps, filing fee,—and to furnish abstract showing prior mortgages—continuance to this date *and the mortgage to be signed by himself and wife, Rosalie Colgan* both note and mortgage secured by mortgage on 338 acres of land more or less, record title in name of Thos. Colgan—subject to prior mortgages of record, aggregating $40,000.00."

Exhibit 15, containing the proposition as sent to the superior officer, was as follows:

"Robert L. Leach,         May 8, 1924.
"Superintendent of Banking,
"Des Moines, Iowa.        Att. F. R. Jones.
"Dear Sir:

"In Re: Thomas Colgan loan, $5,200, guaranteed by Rosalie Colgan, and Rosalie Colgan note, $2,705.08, guaranteed by Thomas Colgan.

"The status of this matter is as follows:

"Thomas Colgan holds the record title to 338 acres of land about 2 miles west of Fairfax. Rosalie Colgan holds title to 137 acres of land adjoining this land, the latter land being unimproved. There is a mortgage for $40,000.00 covering the 338 acres belonging to Thomas Colgan and for 57 acres of the 137 acres belonging to Rosalie Colgan, this mortgage being recorded sometime this spring and running for a period of five years.

"Rosalie Colgan claims that her signature was obtained to the

674

note signed by her of $2,705.08 and her endorsement on the note of Thomas Colgan by misrepresentation. Of course, that would be for her to establish, but under advice of her attorney, she is resisting payment on these grounds.

"However after consultation with Mr. Donnelly, of Johnson, Donnelly & Lynch, attorneys of the city, at which Mr. Byers and I were both present, they make the following proposition: That Rosalie Colgan will secure her note for $2,705.08 by giving a first mortgage on her 80 acres. Neither the time nor the rate was discussed, but the time would be immaterial as the loan would be unquestionably good and the rate I think would be six per cent. Thomas Colgan will secure the $5,200.00 by giving a second mortgage on his 338 acres. The time was not discussed, but we would, of course, insist upon the maturity of this mortgage prior to the first mortgage. I think it can be arranged that this mortgage should not run to exceed four years, and possibly three.

"Under the existing circumstances, it would appear to both Mr. Byers and myself that in preference to a suit and a resistance of the collection of this note, that the security offered, while not entirely acceptable, had better be taken. The security offered on the Rosalie Colgan note is of course entirely acceptable, and with the first and second mortgages on the Thomas Colgan land, the mortgages would not aggregate more than $121.00 principal, and this land is high-class, well improved land and it would seem to both of us that even under the present unfavorable conditions that this land would sell for at least $150.00 per acre under a forced sale.

"Thomas Colgan does not have sufficient personal property at the present time, with the exemptions he would be allowed by law that even if a judgment were secured that it could be collected by execution, and in this connection we are taking in consideration that it is possible that Rosalie Colgan may be relieved from liability through the defense of fraud which she is claiming, and no doubt, he would dispose of his personal property or transfer it so that execution would not reach him.

"A favorable phase of the Thomas Colgan loan is that he has no other personal debts, no borrowed money from any bank and that his current bills do not exceed two or three hundred dollars. He is a very hard working man, industrious, and has always been a money maker, and his present condition is due entirely to an

attempt to help his son-in-law, Jerry Mulherin. He holds a second mortgage on his son-in-law's farm for $13,000 which represents money advanced by him to his son-in-law, but which cannot be considered of any great value. I feel about this man, that barring accidents of ill health, he will work out.

"We thought it advisable to submit this matter to you before giving a definite answer, and would appreciate your early reply, as if suit must be brought the notices must be served sometime during next week."

As against the plaintiff, the foregoing writings, made on the very day of the oral negotiations, and intended to cover the very terms of the proposition of settlement or compromise, must be deemed to have great evidential value. To say the least, in view of the dispute in the oral testimony, the corroborative value of these writings is very substantial. In finding the heart of the controversy, we are concerned, not so much in the present recollection of the witness as to events transpiring five or six years ago, but rather, in the fact itself, as it actually existed at that time. If we were dependent upon the recollection of those events by witnesses at the present time, then the recollection of one would ordinarily be as good as that of the other. Error could readily exist in either one, without impeachment of the candor of either. The writings herein set forth are not subject to the uncertainties of present memory. They speak as of the very day of the transaction. In our judgment, these writings not only corroborate the contention of the defendant, but they tend to establish it affirmatively. The contention of the plaintiff now that there was no dispute and no compromise is negatived clearly by Exhibit 15. The discussion contained in the same exhibit as to the sufficiency of the security for the $5,200 note is quite inconsistent with the present claim that the signature of Mrs. Coligan constituted a part of the security. It appears from the letter that she had 80 acres of unencumbered high-class land. In the discussion of security for such note, there is no suggestion of resort to the wife or to her property. Incidentally it appears that, after the proposition of compromise was accepted, Mrs. Coligan paid the $2,700, in lieu of giving a mortgage therefor. If she was to sign the $5,200 note, there could have been little occasion for the lengthy discussion of the security for such note. It will be noted

also that no discussion of the sufficiency of the security of the $2,700 was made. Its sufficiency was regarded as not debatable.

It is urged by the appellant that there was no proof of any valid defense to the original notes. No such proof was necessary herein. It was sufficient to show that there was a bona-fide controversy. The merit or want of merit of that controversy is not available to either party as a defense to the compromise. *Partello v. White,* 197 Iowa 24.

The plaintiff also relies upon the defeasance clause in the mortgage signed by this defendant. Such clause is as follows:

"To be void upon condition that the said Thomas F. Coligan and Rosalie Coligan shall pay or cause to be paid to the order of said Robert L. Leach, receiver, the sum of $5,563.00 according to the tenor of two promissory notes therefor, dated May 16, 1924, payable at the American Trust & Savings Bank, Cedar Rapids, Iowa, with 6% interest on said notes from date until paid, payable annually, the first note being for $363.00 due March 1, 1925, the second note being for $5,200 due March 1, 1927, with privilege of paying $100 or multiple thereof at any time."

We see nothing in the foregoing that is inconsistent with the contentions of this defendant. Under Section 10052, Code, 1924, her mere signing of the mortgage did not bring her under the operation of any covenant therein. She simply relinquished her right of dower. The defeasance clause does no more than to say that the payment of the note will satisfy the mortgage. It does not purport to describe the note as one signed by Rosalie Coligan. The payment of the note is declared to be a condition of the satisfaction of the mortgage. We therefore see nothing in this clause that aids the plaintiff.

The plaintiff contends for an interpretation of Exhibit 4 to the effect that the $5,200 note, as well as the mortgage, was to be signed by the wife. We have italicized that part of this exhibit which calls for the signing of the mortgage by the wife. Appellant relies upon the words "both note and mortgage," following our italics. The argument is that these words relate back to the preceding words.

On their face they purport to relate forward, naturally. In the first paragraph of this exhibit, relating to the $2,700 note, it is expressly provided that both note and mortgage were to be signed by Thomas. The debt was primarily that of Thomas. That was the apparent reason for requiring his signature. The second paragraph, relating to the $5,200 note, provides only that the mortgage is to be signed by the wife. If the writing at this point is to be deemed of doubtful interpretation, then the doubt should be solved against the plaintiff, as the one responsible for the verbiage. We cannot avoid the conclusion, in the light of these writings, that the defendant has established, by clear and satisfactory evidence, what the agreement of compromise *was,* and that such agreement did not call for her signature upon the $5,200 note.

It is urged, however, that, even if that be true, the mistake was that of the defendant herself, and not the mutual mistake of both parties. This argument is predicated upon the testimony of the plaintiff's witnesses, who participated in the transaction, that they understood the agreement otherwise, and that their intention was that she should sign the note. This contention, however, is predicated upon their present recollection of what the agreement of compromise provided for. We may and do accept their present testimony as entirely candid. Nevertheless, we do find upon these writings that they are mistaken in their recollection of the agreement. It quite necessarily follows that they must have been mistaken two weeks later, when they received the signature, if they believed they were entitled to it under the terms of the compromise.

It should be said at this point that the defendant does not charge them with any wrongful conduct in obtaining her signature. They were not present when she signed the note. What she claims is that she signed it inadvertently. The note, with her signature thereon, as well as that of her husband, was sent to Boyer after the signing. We think the inference of fact, therefore, is quite irresistible that Boyer was mistaken when he received the note in that form and kept it.

The decree of the district court will be, accordingly,—*Affirmed.*

MORLING, KINDIG, WAGNER, and GRIMM, JJ., concur.