GEORGE DICKSON, Appellant, v. SIOUX CITY TERMINAL RAILWAY COMPANY, Appellee.

**Personal injury:** SETTLEMENT AND RELEASE: FRAUD: EVIDENCE. To set aside a settlement and release of a claim for personal injury on the ground of fraud, where the person executing the release was well advanced towards recovery, had consulted attorneys, was apparently capable of looking after his own interests and knew that the instrument he signed was a contract of settlement, the evidence of fraud in procuring the release must be clear and satisfactory. In this action the evidence is held insufficient to establish fraud as a matter of law.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

TUESDAY, MARCH 8, 1910.

ACTION to recover damages for personal injury. There

was a directed verdict and judgment for the defendant. and plaintiff appeals.—*Affirmed.*

*McCormick & McCormick,* for appellant.

*Parker, Hewitt & Wright* and *Shull, Farnsworth & Sammis;* for appellee.

WEAVER, J.—On the 27th of April, 1908, the plaintiff was in the employ of the Cudahy Packing Company at Sioux City. Among his duties were the icing of refrigerator cars, unloading coal, and performing other labor of that general character. The defendant railway company placed the empty cars in position to be iced and hauled them away when loaded. It was the habit of plaintiff and other workmen to deposit their dinner pails upon a platform or upper floor of one of the buildings, and to reach them at noon by climbing over the tops of the cars standing on the track. On the day in question plaintiff had been unloading coal, and at the sounding of the signal at noon quit work, and, climbing on the top of a car standing there, got his dinner pail. He also obtained the pail of a fellow workman, and while handing it down the car was struck by another, which was being backed in upon the side track by a switch engine. The concussion was sufficiently great to throw him from the car and cause the injury of which he complains. On July 20, 1908, plaintiff entered into an agreement with the defendant, acting by its claim agent, one Fisher, whereby he agreed to accept the sum of $350 in full for all claims arising out of his injury, and said sum was thereupon in fact paid and is still retained by him. This action was begun on December 18, 1908, alleging that plaintiff's injury was occasioned by defendant's negligence and demanding a recovery of damages in the sum of $10,000. The defendant denied the claim and pleaded the settlement had with plaintiff. In reply plain-

tiff alleges that the settlement was procured by fraud and by the false representation of the claim agent that the company would pay the fees due to his attorneys and to his physician, and that plaintiff's attorneys had recommended or advised him to accept the offered compromise. The trial court, having heard the evidence, sustained a motion to direct a verdict in defendant's favor.

As the settlement stands admitted, it must prevent any recovery by plaintiff unless he has made a showing of facts from which the jury would be justified in finding that it was procured by fraud as alleged in the reply. A careful examination of the record discloses an entire failure of proof in this respect. The plaintiff's testimony on this point, as shown by his own abstract, is as follows:

On the 20th day of July, 1908, I executed a release of this obligation. It was to one C. B. Fisher, who came to me and represented himself as a claim agent. He came to where I roomed in Sioux City. I told him that we would go up and see my attorneys; and he said that he did not want to see them, as he had seen them. He said that he had just come to have a little talk with me. There was nobody else present. He first offered me $250, and said he would give me what it would cost to take the matter to the Supreme Court. I told him that I would not take it, that I ought to have several thousand dollars. He then said that my attorneys said for me to take $350, and that is all I could get, all that I would ever get out of it. He told me that I would get this much out of it and have all my bills paid. When he made me this offer and stated my attorneys had said that, I told him that if that was what they said I supposed I would have to take it. At his suggestion we then went to the Exchange building at the stockyards. We took a street car, which passed where I roomed. We reached the Exchange building in about ten minutes. There I executed a release for Fisher, and he paid me the $350. That evening I went to my folks in Missouri. I did not pay any of my bills. I first learned that Fisher had made misrepresentations to me about ten days after, through Vernon, a lawyer at the town where I went. I

had him take up the matter with McCormick & McCormick. I believed this man Fisher when he made the representations to me, and I believed him when he told me that my attorneys said for me to take $350, as that was all that I could get out of it. If he had not made those statements and representations to me, I would not have made that settlement. At the time he made them I did not know that they were false.

Assuming that the representations were made to him as alleged, it was incumbent upon plaintiff to prove that they were untrue. His only knowledge that they were false he claimed to have received · as a matter of hearsay from one Vernon, who is not a witness. The only other evidence in this respect is given by one of the members of the firm of attorneys having charge of his interests, and this partner testified as follows: "I am now, and was on and prior to the 20th day of July, 1908, the attorney in this case for plaintiff. Neither at that time, prior thereto, nor since, have I talked with C. B. Fisher in regard to this case. He never came to see me nor the firm in regard to it or the settlement." The other member of the firm did not appear as a witness.

It is hardly necessary to say that this is not sufficient to raise an issue for the jury. Everything testified to by plaintiff or his counsel may be literally true, and yet the claim agent, Fisher, may have had with the other member or members of the firm the very conversation which plaintiff says Fisher pretended to repeat to him. This contract of settlement was not one obtained by a claim agent obtruding himself upon a sufferer before he had recovered from the first shock or depression occasioned by his injury. It was nearly three months after the accident; he was well advanced on the road to recovery; he had consulted counsel; and he admits that he knew that the paper he signed was a contract of settlement. Fraud in its procurement will not be presumed under such circumstances.

It must be proved, and that, too, by something more than ambiguous denials and repetitions of hearsay. While we are ready at all times to set aside settlements obtained by undue advantage, deception, and fraud, those which are made by sane men under no constraint of bodily or mental suffering and to all appearances capable of caring for their own interests should be upheld, unless we are to repudiate the fundamental principles which underlie the law of contracts. A verdict avoiding the agreement in this case on the plea of fraud would have to be set aside as without sufficient support in the evidence.

This conclusion renders it unnecessary for us to consider other issues raised or other points made in argument.

For the reasons stated, the judgment of the district court is *affirmed*.