CHARLES B. HEFLEN, Appellee, v. R. BROWN, Appellant.

No. 39168.

MARCH 5, 1929.

REHEARING DENIED MAY 17, 1929.

*R. Brown* and *E. J. Kelly*, for appellant.

*Kenneth H. Davenport*, for appellee.

KINDIG, J.—Defendant-appellant is a lawyer at Creston, and the plaintiff-appellee is a railroad locomotive engineer, with headquarters at that place. Appellant became interested in certain Oklahoma oil fields. Hence he approached appellee, for the purpose of borrowing money to be used in the venture. After obtaining the desired funds, in the amount of $1,000, appellant then induced appellee to purchase stock, in the par value of $1,000, to be repurchased at the end of a year. For the purpose of recovering the loan, and in order to obtain reimbursement under the repurchase agreement, this action was brought. The petition filed by appellee, as plaintiff, against appellant, as defendant, contained six counts, but only three were submitted to the jury. Those presented to that body were Counts 1, 3, and 4. Consequently, Counts 2, 5, and 6, are not involved. Counts 1

and 3 relate to the loan aforesaid, and Count 4 has reference to the repurchase undertaking. At the conclusion of a trial on the merits, the jury found for the appellee, and returned a verdict against the appellant in the sum of $2,770.42. Reversal is urged by appellant because of erroneous instructions given to the jury. No other questions are raised.

Convenience requires that Counts 1 and 3 be considered first.

I. On January 31, 1922, appellee, at the instance and request of appellant, delivered to the Moore Oil & Gas Company the sum of $1,000. Contemporaneously with that transaction, appellant assumed one half of the obligation for repayment, and executed his note to appellee in the sum of $500. As the net result of the manipulation between the parties, the Moore Oil & Gas Company and D. H. Moore owed appellee $500 on the loan agreement, and appellant was indebted to the latter for $500 on the promissory note. Interest was to be paid at the rate of 8 per cent per annum.

Apparently appellant was interested in the oil transaction, and told appellee that he would guarantee the payment of all the principal and interest on the $1,000 thus advanced. Security agreed upon was that the Moore Oil & Gas Company would deliver to appellee: First, the oil and gas lease held, or to be held, by it on a certain 10-acre tract in Garvin County, Oklahoma; second, shares of its own stock in the par value of $2,000; and third, 20 shares in the Home Oil & Gas Company, of Sedalia, Missouri. Accordingly, appellant demanded of and received from appellee a contract to the effect that one half of the alleged securities aforesaid should be due the former, in view of the fact that he had assumed $500 of the loan above mentioned. None of the securities mentioned were ever delivered to appellee.

Immediately after the negotiations just related, appellee learned that Moore, who appeared to be the executive officer in the Moore Oil & Gas Company, had absconded. Then appellee and his wife advised appellant of that fact; whereupon appellant stated that Moore had called him by telephone, and said that the title to the 10-acre lease named in said securities was defective. Furthermore, appellant contends that he went to Oklahoma and demanded that Moore have his corporation return the $1,000 loaned by appellee, but that, instead of doing so, Moore offered

to sell appellant another lease. Therefore, appellant agreed to buy this second document, and when so doing, assumed and agreed to pay all the indebtedness due appellee arising out of the original loan transaction above described. It appears that appellant paid $25,000 in cash for this second lease, known as the Green Crest, and in addition thereto, agreed to pay $30,000 more out of the oil production.

After returning home from Oklahoma, after the purchase of the Green Crest lease, appellant reported to appellee concerning the new purchase. Upon hearing this, appellee complained to the appellant about the situation, and threatened to bring suit at once unless the $1,000 loaned the Moore Oil & Gas Company, including the $500 note, was paid at once. So, in order to prevent the publicity of a suit at that time, appellant agreed to pay appellee the entire $1,000 originally loaned to the Moore Oil & Gas Company, embracing the $500 note aforesaid.

Resultantly, said Counts 1 and 3 of appellee's petition sought recovery on appellant's promissory note of $500 and his oral agreement, just mentioned, to pay the remaining $500. By way of objections to the court's charge to the jury, appellant suggests the following propositions:

First. Contention is made by him that, while appellee can obtain redress on the promissory note for $500, he cannot succeed in recovering the remaining $500, because the basis therefor is an oral contract, in the nature of a guarantee, and therefore unprovable, under the statute of frauds. Manifestly, this objection was not raised in the court below. This particular point was not presented by answer, demurrer, objection to the evidence, motion for a directed verdict, or a motion in arrest of judgment. For the first time, the argument on this phase of the controversy is raisèd in this court. Now it is too late. Through failure to interpose the exception in the court below, the right to challenge is waived.

Second. Appellant urges next that the district court assumed in its instructions to the jury that the appellee loaned the Moore Company $500 and appellant $500; while, in truth and

 in fact, appellant asserts, the entire $1,000 was loaned to the Moore Company by appellee, and the appellant purchased or assumed a one-half interest therein by giving the $500 note. However this may be, appellant admitted his assumption of the entire obligation, and agreed to repay appellee the entire sum of $1,000 and interest. Inaccuracy of statement on the part of the trial court, if any there was, did not prejudice appellant.

Third. Further complaint is made by appellant because the court instructed at all concerning the $500 contained in the above transaction which was not embraced within the note. His theory  at this juncture seems to be that there was no consideration for the assumption of that amount of the loan to the Moore Company not contained in the note. Clearly, there is no merit in this assignment of error. To begin with, appellant represented to appellee that the loan was safe, and that the money would be repaid by the Moore Company. Afterwards, appellant made an adjustment with the Moore Company on the basis that the former would assume and pay appellee's loan. Following this, when appellee became dissatisfied, and threatened suit, appellant promised to repay the obligation, provided that such proceeding was not instituted at that time. Such forbearance on the part of appellee amounted in itself to a consideration, to support appellant's promise. *Urdangen v. Fryer*, 183 Iowa 39. Appropriate language in the *Urdangen* case is:

"As a basis of the alleged settlement of 1914, it was not essential that any actual indebtedness should have existed; all necessary was that plaintiff, in good faith, should have asserted claims against defendant, even though these may have been excessive or unfounded in fact. If disputed claims are asserted in good faith, even though judicial investigation might have demonstrated them to have been unfounded in fact, the settlement thereof furnishes a sufficient consideration for the settlement agreement."

Fourth. Insistence is made by appellant that the court erroneously instructed the jury in relation to the Green Crest lease transaction above explained. Stating the thought in another way, appellant says that, in buying the Green Crest lease, he was

acting for appellee, and that the same accordingly became the property of the latter. Plainly this is not in accordance with the record, because appellant himself admits buying the Green Crest property for himself, and said that, in so doing, he assumed appellee's loan of $1,000, and agreed to pay it.

Fifth. Another grievance of appellant's is predicated on the thought that his defense in reference to the $1,000 loan to the Moore Company was not properly submitted to the jury. But a study of the record discloses that there is no basis for this claim. The district court carefully told the jury that it was the contention of appellant that, immediately after the Green Crest Oil lease transaction, above described, appellant offered to pay appellee the $1,000, but that the same was refused. Continuing its statement of appellant's defense at this point, the trial court told the jury that the rejection of the $1,000 on appellee's part was due to the fact that he then and there wanted to invest that sum of money in the Green Crest Oil lease, and did, in fact, obtain therewith a one-twenty-fifth interest therein. Pursuing that theory thus advanced by appellant, the district court informed the jury that the acquisition of that interest in the Green Crest lease, according to appellant's testimony, canceled all previous obligations existing between appellee, the Moore Oil Company, and appellant. All that, of course, was denied by appellee. Wherefore, a jury question arose, and was determined adversely to appellant. We cannot change that result.

Sixth. Also, it was part of appellant's defense that appellee became the owner of Certificate No. 94, for 10 shares of Green Crest Oil & Gas Company stock, aggregating $1,000 in the par value. In denial thereof, appellee testified that he received this stock as collateral security, in accordance with the agreement before mentioned. Conflicting statements resulted, and the issue was properly determined by the fact-finding body.

Seventh. Finally, appellant asserts that the trial court did not properly place the burden of proof. A careful reading of the entire instructions, however, disposes of this complaint, because the trial court very carefully and correctly put the burden upon appellee to support his allegations, and then, on the other hand, imposed the duty upon appellant to sustain his alleged affirmative defenses. Error does not appear in this regard.

Thus, we have numbered and disposed of appellant's assignments of error under Counts 1 and 3 in numerical order.

II. Attention is now directed to Count 4, relating to the repurchase agreement. It is to be remembered that this controversy refers to another and different stock transaction. This  stock was in the Green Crest Oil & Gas Company. Purchase thereof by appellee through appellant was consummated on or about May 24, 1922. Cash therefor was paid by appellee to appellant for the entire consideration thereof, amounting in all to $1,000. An essential part of that deal was the repurchase agreement executed by appellant and appellee at the time of the aforesaid stock transfer. Important in that written undertaking is a clause reading as follows:

"At the end of one year from date hereof, the said shares may be returned to [appellant] and he will pay therefor the amount paid for the same; that is, the par value thereof, with interest at eight per cent per annum, less all dividends which have been received by [appellee] second party."

Tender and return of this stock were denied by appellant in his answer. So, too, appellant, during the trial, adopted the theory that appellee at no time within the year offered to return the stock or demand the repayment of the money therefor. Special notice is to be taken of the fact that appellant did not contend that the tender and demand for repayment were to be made at the end of the year. His idea was that such must have been done during, but not after, the year. For the purpose of meeting appellant's position in that respect, appellee pleaded waiver and an agreement to pay after the year. However, in producing proof, appellee showed that the tender and demand were made in April, 1923, before the end of the year, and continued until after that interim up to the time suit was actually brought. Appellant did not attack appellee's plea of waiver by motion, demurrer, or any other method, because it did not state the necessary elements of the doctrine relied upon. Neither did he object to the introduction of evidence thereunder, nor base a motion for a directed verdict upon the insufficiency thereof. No motion in arrest of judgment was asked because of this.

When presenting the issues to the jury, the trial court sub-

mitted the waiver as one of them. Then, for the first time, after the jury's verdict, the appellant complained of the deficient plea of waiver. Such objection was made by an exception to the instructions. Nowhere else did the complaint appear. Having allowed the issues to be made and the trial to be had upon the theory of the trial as if the waiver were presented by the pleading, appellant now, at this late date, cannot change front and set aside the verdict of the jury and judgment of the court on a new doctrine. *Enix v. Iowa Cent. R. Co.,* 114 Iowa 508; *Heiman v. Felder,* 178 Iowa 740; *First Nat. Bank v. Zeims,* 93 Iowa 140; *Conger v. Crabtree,* 88 Iowa 536; *Linden v. Green,* 81 Iowa 365; *Benjamin v. Vieth,* 80 Iowa 149; *Zundelowitz v. Webster,* 96 Iowa 587; *Martin & Turner v. Widner, McKenzie & Co.,* 91 Iowa 459; *Great Western Ptg. Co. v. Tucker,* 73 Iowa 755; *City of Oskaloosa v. Boyd,* 185 Iowa 1051.

Every opportunity afforded appellant to interpose an objection to the insufficiency of the pleading was neglected, and everywhere throughout the trial he permitted the court to believe that one of the issues involved was that of waiver. After having led the court into that theory of the trial, it is too late now for appellant to change his mind and interpose a new doctrine into the record. Notwithstanding appellant's position on the question of waiver during the trial, he now, for the first time, in this court contradicts himself by setting forth in the reply brief and argument a ground of reversal based upon the thought that the tender and demand for repurchase must have been after, rather than before, the year named in the agreement therefor, as aforesaid. While in the district court appellant's defense was based upon the alleged failure of appellee to tender and demand payment within the year, now, in complete reversal thereof, appellant suggests that such could not have been done during that period, but must take place thereafter. The inconsistency is so marked that it condemns itself.

Therefore, under the facts and circumstances here revealed, appellant cannot obtain a reversal, and the judgment of the district court must stand; wherefore, it is affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.