B. I. SALINGER, Appellant, v. GLIDDEN FARMERS ELEVATOR COMPANY, Appellee.

No. 39580.

JUNE 23, 1930.

*Salinger, Reynolds, Meyers & Cooney,* for appellant.

*Lee & Robb* and *Douglas Rogers,* for appellee.

DE GRAFF, J.—In the year 1920, the plaintiff-appellant was the owner of a parcel of Carroll County, Iowa, farm land. In that year he leased same in writing for the crop year 1921-1922, to one Roy Solt, not a party in this action. In that lease this provision is found:

"As rent for the premises hereinbefore leased the said Solt agrees to pay one half of the crop raised on the premises, delivered either at Glidden or Carroll, Iowa, at the option of the lessor, free of all charges and offsets, except that the lessor shall pay one half of the twine bill."

This lease was renewed for the year 1922-1923. In this lease is found the following provision:

"On or about the first of September, 1922, the parties hereto are to agree upon the minimum rental to be delivered from corn crop. If they cannot so agree, that minimum rental due shall be decided by the county auditor of Carroll County, Iowa, or, if he cannot or will not serve, by the clerk of the district court of said county."

Prior to the expiration of the second lease, to wit, March 1, 1923, there was an oral renewal for the year 1923-1924. Prior to March 1, 1924, the landlord and tenant aforesaid orally renewed their lease, and the tenant Solt remained upon the premises during the year 1924.

On July 31, 1924, the plaintiff-appellant and the tenant Solt entered into a written agreement, extending the original lease to March 1, 1926. In this lease is found the following provision:

"On or about October 1, 1924, the lessee, Roy Solt, shall offer to the lessor a corn rental at a stated number of bushels per acre. If the lessor agrees to that, that shall be the rental. The lessor shall have two options as to this offer. He may decline to accept the offered rental and take the whole crop by giving to the lessee the same number of bushels per acre that

the lessee has offered. Or he may proceed to ascertain a minimum rental as is now provided in the original lease.''

Shortly prior to February 6, 1925, the tenant Solt made claim to the plaintiff (appellant) that the rental due should be computed on the basis of 25 bushels of corn per acre, as Solt declared he had cultivated 160 acres of corn in 1924, and that the total yield was 4,000 bushels. Plaintiff mailed a letter to Solt (received February 7, 1925), declining to accept Solt's proposition. In this letter the plaintiff said:

''Another option in this contract is that I may proceed to ascertain a minimum rental as is now provided in the original lease. I think I shall try that method first and will send out a man to see whether you and he can agree on a minimum rental.''

The culmination of the matter in dispute is that the parties could not and did not agree as to the landlord's share of the corn crop for the year 1924. This disagreement was the provocation for calling in the county auditor, under the terms of the lease, for the determination of the rental due the landlord. The county auditor did act as an arbitrator and the amount of corn to which the appellant was entitled as rental was decided by him, and a formal written and signed award was made, which reads as follows:

''I, W. T. Bohnenkamp, county auditor of Carroll County, Iowa, having made due investigation herein, do hereby determine the minimum rental to be delivered from corn crop to B. I. Salinger by Roy Solt and Beatrice Solt as rent on land of Salinger occupied by said Solts in the year 1924 at 2,784 bushels.''

The auditor was a witness upon this trial, and explained the manner and method of his computation. It is also shown that both Solt and the landlord had knowledge of the method of computation and the result thereof prior to the filing of the award. In fact, the agent of the plaintiff-appellant prepared the award signed by the county auditor as arbitrator. It may be observed at this point that the contract of lease as to the rent due appellant, payable by Solt, made no provision as to the manner or method of making the award. The award made by

the auditor was in bushels of ear corn by measurement, and the corn that was sold by Solt on behalf of plaintiff to the defendant elevator company, under the stipulation presently noted, was shelled corn; but it was the corn that was awarded to the appellant by the arbitrator.

This action for conversion against the defendant elevator company was commenced April 30, 1925.

It further appears from the evidence that the plaintiff (landlord), prior to the commencement of the instant action, and a short time subsequent to the award made by the auditor as  arbitrator, instituted an action against Solt and his wife for the 1924 rent, which action was aided by a writ of attachment against Solt's property on the leased premises. A levy was made by the sheriff, and later the return was amended, reciting where the corn was located, and that it was all ear corn, measuring 2,784 bushels, according to crib measurements. We discover no basis for the challenge by appellant to the amendment to the return. See 10 Encyc. of Evidence 959.

On April 4, 1925, a stipulation in writing for the settlement of the attachment proceeding was entered into and signed by the plaintiff landlord and his tenant, Solt. The stipulation in question provided that the defendants (Solt and wife) should, as soon as possible, obtain a sheller and necessary help, and shell and deliver to the Morehouse Elevator Company, at Glidden, Iowa (defendant herein), "for account of plaintiff," the corn levied upon by the sheriff of Carroll County, and that there should be no liability under the attachment thereon on the part of Solt and wife in making such delivery.

It was further stipulated that Solt and wife should hold a public auction on the premises of plaintiff heretofore occupied by Solt and wife, not later than April 18, 1925, for the sale of all hogs and all hay on said premises belonging to Solt and wife, and also other exempt property belonging to the said tenants, to insure the payment into the hands of the clerk of said sale the net amount of said sale, which, added to the check for $199.15 (resulting from the sale of shelled corn belonging to Solt) would be "sufficient to enable him [the tenant] to make the payments herein provided to be made by him [the tenant]." It was further provided that Solt should deliver to the said clerk

of sale the check of the Morehouse Company ($199.15), and that the clerk of the sale agreed upon and named in the stipulation should receive all sums of money resulting from the auction sale, and immediately apply same to certain named obligations to plaintiff. The stipulation also recited that Solt (the tenant) should, immediately upon the completion of said auction sale, vacate the leased premises, and that the tenant should have the right, in lieu of the sale of corn belonging to him and not included in said attachment, to sell the same on the market, the proceeds thereof to be placed in the hands of the clerk of said sale, the same as if sold at said sale. It is then provided:

"Upon the performance of the conditions aforesaid by defendants, said cause of action shall stand dismissed at plaintiff's [landlord's] costs. Defendants [tenants] will be released from any and all claims now existing in favor of or made by plaintiff against the defendants [Solts] or either of them. The contract of lease of the premises of the plaintiff with the defendants for the year commencing March 1, 1925, shall be at an end, and all parties hereto shall be released from any obligations thereunder, and the note for the 1925 cash rental shall be surrendered by plaintiff. Dated this 4th day of April, 1925. B. I. Salinger, Lee & Robb, Attorneys for defendants."

The provisions of this stipulation were performed by the tenant, and the plaintiff Salinger did dismiss of record at his costs the cause of action giving rise to the said stipulation.

The defendant, in its answer to the petition of plaintiff, with the exception of certain admissions made as to the relations between plaintiff and his tenant, Solt, denied all other  material allegations, and, for a separate and distinct defense, pleaded the matters heretofore set forth, and alleged that by reason thereof there was a full and complete performance and a settlement of this cause of action. By way of reply, the plaintiff alleges, *inter alia,* that, by virtue of the adoption in defendant's answer of the stipulation in the attachment proceeding, the defendant became a party to said stipulation, and must respond to plaintiff the same as Solt, if he were the party to this action, and further, that the stipulation is wholly without consideration. It is quite apparent that the aforesaid

stipulation is supported by ample consideration, and we discover no merit in the claim that the instant defendant is in the same position as if Solt were a party in his stead.

The corn awarded plaintiff by the arbitrator was corn on the cob, to wit, 2,784 bushels. The corn sold to the Elevator Company was shelled corn, amounting to 1,869 bushels and 44 pounds. In the first instance, the corn admeasured as the plaintiff's share by the arbitrator was corn on the cob. In the second instance, it was the same corn, shelled, and delivered to the elevator company. The award is not impeached, nor did it result from the mutual mistake of the parties. The evidence is clear that, at the time the award was determined, both landlord and tenant knew what was being done, and what was done. Under the stipulation, prior to the commencement of this action, the tenant Solt was obligated to shell the corn and deliver it at Glidden, Iowa. This he did. The county auditor, in performing his function under the provision in the lease, was governed by no stipulation to make his decision according to bushel by statutory weight or by bushel measurement. He testified that he determined the minimum rental by formula measurement alone.

The trial court, sitting as a jury, under agreement of the parties, ruled that the tenant had made the delivery as contemplated and agreed by the parties, and that, therefore, the defendant Elevator Company was under no liability to the plaintiff. The question, under the admitted claim of plaintiff, is whether the plaintiff is entitled, under his contract of lease with his tenant, to corn by avoirdupois pounds or by bushel measurement.

Both the landlord (Salinger) and the tenant (Solt) were called as witnesses upon the trial of this cause. The plaintiff, Salinger, testified:

"There was delivered for me at the Morehouse elevator something like 1,869 bushels, and I received that. I never got the difference between that amount and the 2,784 bushels awarded by the county auditor, in any form."

Solt testified, respecting the 1924 corn in the double crib on the leased premises:

"There was not more in one [crib] than in the other, except, perhaps, a bushel or two. There was no difference to speak of. It was all out of the same box. All of the corn raised on the place was put in these two cribs. No corn was removed from the west crib [Salinger's share of the corn crop] after I shelled, until the 16th day of April, 1925. None was removed until I shelled. It was shelled along the first of April, under a stipulation between plaintiff and me. The corn was delivered direct from the sheller to the Morehouse elevator. All of the corn in that crib at that time was delivered to the Morehouse elevator."

The real problem in this case is to find the basis for the alleged conversion by the elevator company. Clearly, there was no lien, since that matter was settled by the filed stipulation between the plaintiff and Solt on April 4, 1925. The shelled corn delivered to the elevator company by the tenant Solt was Salinger's corn, and under the terms of the stipulation, it was delivered to the Glidden Elevator "for account of plaintiff," and was "the corn [on the ear] levied upon by the sheriff of Carroll County, Iowa," in the attachment proceeding.

The primary error relied upon by appellant is that the court erred in refusing to hold that where, as here, the contract fails to define bushels, the bushels due, are, under the law, bushels by statute weight. Appellant states in his brief and argument:

"If crib measure complies with the contract between plaintiff and Solt, or the award thereunder, defendant owes plaintiff nothing. If either calls for bushels of statute weight, defendant owes plaintiff for 1,055 bushels and 50 pounds of corn, of the value at least of $1.08 per bushel. This 1,055 bushels is the difference between 2,784 bushels of corn by crib measure and 2,784 statute weight bushels."

The position of the appellee, as defined and stated in its argument, is:

"First, that, because appellant has received all the rent agreed to be paid by Solt, he has no cause of action against the appellee. Second, that, because of the stipulation of settlement made and carried out between appellant and Solt in the action

to collect the farm rent claimed by appellant, appellant has waived the right to maintain this action against the appellee.''

In the light of the facts and circumstances disclosed by the record, we ask, Has the appellant been paid all that was contracted for under the lease with Solt? The answer is in the affirmative. It is shown without dispute that plaintiff's rental was one half of the corn raised by Solt on appellant's farm. It is shown without serious dispute that the corn so raised was divided by Solt, and one half thereof was placed in the west crib on the farm, as appellant's share. The appellant knew, or is presumed under the facts to have known, the kind of corn set apart to him by the arbitrator. The stipulation of settlement in the attachment proceeding caused that action and all matters incident thereto to pass out of the picture. The arbitrator, as provided by the lease, did make his award by adopting the usual and customary method in determining the number of bushels of ear corn in a crib, and the method adopted was known to the agent of the appellant at the very time. The appellant has received all of the corn which was set aside to him by his tenant and admeasured to him by the arbitrator.

Considerable emphasis has been placed by appellant in argument on the statutory provision governing ''commodities sold by the bushel,'' the measure of which shall be determined by avoirdupois weight: ''Corn on the cob (field) 70 pounds. Corn, shelled (field) 56 pounds.'' Section 3236, Code, 1924. It will be remembered that the award in the instant case was by crib measurement of ''corn on the cob,'' and that no such corn was delivered at the elevator. We discover nothing in the record as to what this corn (on the cob) would have weighed, if so delivered. Another provision of the statute (Section 3232) provides that:

''The unit or standard measure of capacity for substances not liquids from which all other measures of such substances shall be derived and ascertained shall be the standard half bushel * * *.''

This statutory measurement was not followed by the arbitrator. He adopted the customary formula, to wit: Multiply the length, width, and height of the crib, and divide the cubical

contents by 2.154. This gave him the answer which was written into the award by appellant's agent. Both parties were advised of his conclusion, and they knew the method adopted by him in reaching that conclusion. The arbitrator was not circumscribed by anything said to him, or by the agreement of the parties; nor was he precluded, under the instant facts, by statutory provisions to do otherwise than what he did do in making the award. By reason of the dispute between appellant and his tenant, the function of the arbitrator was to determine the appellant's "one half" of the corn grown under the 1924 lease. He determined that share in bushels by measurement. The arbitrator in no wise can be presumed to have known or to have anticipated the technical construction that would later be attempted to be placed by appellant on his ruling or his award. The arbitrator must be presumed to have acted honestly, and with no intention to embarrass or entrap anyone.

It must be held, as a matter of law and fact, that the appellant's lien of whatever name was satisfied by the delivery of the corn which was awarded to him by the arbitrator. When a lien ceases by payment of the claim in full, any interest the lienor had in the rentals from the premises also ceased. The lien terminated *eo instante*. The stipulation in question involved the settlement of a bona-fide dispute between the parties. It constituted a valid compromise, and in such a case, the law will not inquire into the merits of the respective claims.

Submitted with this cause is appellant's motion to penalize the appellee for filing an unnecessary amendment to abstract. Sufficient to state that this court has found the amendment quite useful. The motion to penalize appellee is overruled.

We conclude that the judgment entered by the trial court is sustained, in the light of the entire record, and it becomes immaterial whether all of the findings of the court are based upon proper grounds or not.

The judgment entered is—*Affirmed*.

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.